FILED

3/19/19

Clerk, U.S. District Court
District of Montana
Helena Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| NISSAN MOTOR ACCEPTANCE CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT ALLEN NISSAN OF HELENA, INC., and ROBERT T. ALLEN, individually,<br><br>Defendants. | CV-19-16-H-CCL<br><br>Temporary Restraining Order |

Before the Court is a motion for temporary restraining order and preliminary injunction filed by Plaintiff Nissan Motor Acceptance Corporation ("NMAC") on March 6, 2019. Rather than issuing the requested emergency temporary restraining order without providing the defendants with an opportunity to be heard, the Court set a status conference for today's date. Plaintiff was represented at the status conference by local counsel, Pamela D. Combo of Witherspoon Kelley and by *pro hac vice* counsel Andrew S. Elliott of Severson & Werson. Defendants were represented by Murry Warhank of Jackson, Murdo & Grant, P.C.

## PROCEDURAL BACKGROUND

### Complaint

Plaintiff filed what it terms a "Verified Complaint" on Friday, February 22, 2019. Plaintiff's complaint names two defendants, Robert Allen Nissan of Helena (Nissan of Helena) and Robert T. Allen, an individual. (Doc. 1, Compl. at ¶ 4). Robert T. Allen (Allen) is named individually as the guarantor of Defendant Nissan of Helena. The defendants are also identified as agents of one another. (Doc. 1 at ¶ 6). The complaint contains seven claims for relief. The first claim for relief is for breach of the Wholesale Agreement between NMAC and Nissan of Helena.[1] (Doc. 1 at ¶¶ 29 - 34). In its prayer for relief as to the first claim, Plaintiff seeks damages of over $6.7 million, with interest and charges as allowed under the Wholesale Agreement. (Doc. 1 at 14, ¶ 1).

In its second claim for relief, Plaintiff is bringing an action for "claim and delivery" under Mont. Code Ann. §§ 27-17-101 through 27-17-405. Plaintiff alleges that it has a security interest in all the collateral described in the Wholesale Agreement and that it is entitled to immediate possession of that collateral based on Defendant's defaults under the Wholesale Agreement. (Doc.

---

[1] Plaintiff refers to Defendant singular in the cited paragraphs without identifying which defendant, which is not particularly helpful. Robert T. Allen signed the wholesale agreement as the President of Nissan of Helena. (Doc. 1-1).

1 at ¶¶ 35 - 44). In its prayer for relief as to its second claim, Plaintiff asks the Court to enter an order to show cause why a writ of possession should not be directed to the Sheriff of Lewis and Clark County to seize all personal property in which Plaintiff has a security interest. (Doc. 1 at 14, ¶ 2).[2]

The third claim for relief seeks injunctive relief under Fed. R. Civ. P. 65. (Doc. 1 at ¶¶ 45 - 48 and at 15, ¶ 3). NMAC alleges that it has a perfected security interest in the collateral described in the Wholesale Agreement (Doc. 1 at ¶¶ 13 – 14) and that Defendant has violated the Wholesale Agreement by failing to "hold in trust and pay, without demand, the unpaid balance of any advance made by NMAC with respect to a Vehicle at or near the date on which the Vehicle was sold, leased, or placed into use by Defendant." (Doc. 1 at ¶ 15). Defendant refers to such vehicles as being "sold out of trust" or "SOT." (Doc. 1 at ¶ 7). Plaintiff alleges that it "has demanded Defendant pay the amounts owing and all of its other obligations, or to surrender the Collateral, but despite this demand, Defendant has failed and refused to do so." (Doc. 1 at ¶ 33). Plaintiff alleges that "Defendant's wrongful conduct in failing to turn over to NMAC the Vehicles, and other Collateral in which NMAC has a security interest has caused

---

[2] The parties should be prepared to address whether this Court has jurisdiction to issue an order to the Lewis and Clark County Sheriff at the hearing on the order to show cause.

and will continue to cause great and irreparable injury to NMAC unless and until enjoined and restrained by order of this Court." (Doc. 1 at ¶ 46). In its prayer for relief as to its third claim, Plaintiff seeks "a temporary restraining order, preliminary injunction and permanent injunction, each prohibiting Defendants and their principals, agents, employees and other representatives from selling, diverting, commingling, depositing, spending, or otherwise disposing of proceeds of the lease, sale or other disposition of any and all Vehicles and other personal property of Defendant in which NMAC has a security interest, and from doing anything with the proceeds and other income of same, other than paying them over to NMAC or depositing the same into Court." (Doc. 1 at 15, ¶ 3).

The fourth claim for relief seeks specific performance of that portion of the Wholesale Agreement that requires Defendant and its agents to assemble and deliver the collateral to NMAC. (Doc. 1 at ¶¶ 49 – 53 and 15, ¶ 4).

Plaintiff seeks damages of approximately $5,492.41, with interest and charges as allowed under the Sign Lease Agreement for breach of that agreement in its fifth claim for relief. (Doc. 1 at ¶¶ 54 – 57 and 15, ¶ 5). In it sixth claim for relief, Plaintiff seeks damages of over $38,000 with interest and charges for Defendants' violation of the Lease Agreement. (Doc. 1 at ¶¶ 58 – 64). Plaintiff uses the term "Lease Agreement" to refer to the Lease Plan Financing and

Security Agreement. (Doc. 1 at ¶ 21). In its prayer for relief as to its sixth claim, Plaintiff seeks "damages under the Lease Agreement in the sum of approximately $38,650.52, with interest and charges as allowed under the Sign Lease Agreement." (Doc. 1 at 15, ¶ 6).

Plaintiff's seventh claim for relief is the only claim directed specifically at Defendant Robert T. Allen and is based on his execution of a Continuing Guaranteed Agreement guaranteeing the full payment of all obligations of Defendant to NMAC. (Doc. 1 at ¶¶ 65 - 70). Plaintiff seeks damages of over $6.7 million from Defendant Robert T. Allen in its prayer for relief as to the seventh claim. (Doc. 1 at 15, ¶ 7).

## Motion for Order to Show Cause

Plaintiff filed a motion for an order to show cause on Plaintiff's second claim for relief (claim and delivery under Montana law) late on the afternoon of February 28, 2019. (Doc. 6). On March 1, 2019, this Court set a hearing on Plaintiff's motion for March 29, 2019. (Doc. 7). The Court noted in its March 1, 2019, order that it was not its usual practice to enter an order to show cause as to a party that had not yet been served and ordered Plaintiff to serve both defendants with a summons and complaint, a copy of the motion, and a copy of the order on or before March 5, 2019.

### Service

The summons and complaint, a copy of the motion, and a copy of the order were served on a legal assistant at Jackson, Murdo & Grant, the Registered Agent for Defendant Robert Allen Nissan of Helena, on March 4, 2019. (Doc. 13).

The summons and complaint, a copy of the motion, and a copy of the order were served on Defendant Robert T. Allen at the dealership on March 4, 2019. (Doc. 14).

### Motion for TRO and Preliminary Injunction

On March 6, 2019, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 8). Plaintiff's motion is supported by a brief (Doc. 9) and by the affidavit of Jeff Griffin. (Doc. 10). Mr. Griffin is NMAC's Senior Manager, Special Credit, and is responsible for the Nissan of Helena account. (Doc. 10 at ¶ 1). Mr. Griffin also serves as the custodian of records for NMAC and lays the foundation for the business records that are attached to his affidavit. (Doc. 10 at ¶ 2).

On March 8, 2019, after receiving notice that the defendants had been served with the summons and complaint and the Court's March 1, 2019, order, the Court set this status conference and ordered Plaintiff to serve the motion,

affidavit and brief, and the March 8, 2019, order on each defendant. Service was accomplished on March 11, 2019. (Docs. 16 and 19).

**LEGAL STANDARDS**

The purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm until the motion for preliminary injunction can be heard. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 429, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). The temporary restraining order can be granted without providing the opposing party an opportunity to be heard, "if specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Rule 65(b)(1), Fed. R. Civ. P. Defendants have had notice of this case since March 4, 2019, and were notified about this status conference on March 11, 2019. Defendants have, therefore, been given the opportunity to be heard in opposition to the motion.

The legal standard for granting a temporary restraining order is the same as the legal standard for granting a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking preliminary injunction must establish (1) likely success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) that the

balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (rejecting the sufficiency of the mere "possibility" of irreparable harm but rather requiring "likely" irreparable harm).

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The United States Court of Appeals for the Ninth Circuit recognizes that district courts have discretion under Fed. R. Civ. P. 65(c) to determine the amount of security required and to hold that no security is required, "[d]espite the seemingly mandatory language" of the rule. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

## ANALYSIS

1. <u>Probability of Success on the Merits</u>

Mr. Griffin's affidavit and the documents attached to it demonstrate that in April of 2009, Defendant Robert T Allen signed the Automotive Wholesale Financing Agreement and Security Agreement, referenced by Plaintiff as the Wholesale Agreement, in his capacity as President of Nissan of Helena. (Doc.

10-1). Defendant Nissan of Helena granted NMAC a security interest in the property described in section 2.4 of the agreement, collectively referred to as the collateral. (Doc. 10-1 at ¶¶ 2.4.1 through 2.4.5). NMAC perfected its security interest in the collateral by filing a UCC-1 financing statement with the Office of the Secretary of State of Idaho on April 3, 2009. (Doc. 10 at ¶ 10 and Doc. 10-2).

Defendant Nissan of Helena agreed that upon disposition of any property it would "promptly pay NMAC the amount due related to the item sold, together with interest, in accordance with NMAC's Wholesale Floor Plan Payoff Policy." (Doc. 10-1 at 2, ¶ 2.3.1). Defendant Nissan of Helena agreed that upon Defendant's default, NMAC had the right to take possession of the collateral and require Defendant Nissan of Helena to assemble all items of collateral and make it available to NMAC. (Doc. 10 at ¶ 13).

During wholesale inventory audits conducted in early January, Plaintiff determined that Defendant breached the Wholesale Agreement due to its failure to timely pay for nineteen vehicles. (Doc. 10 at ¶ 19). Rather than curing the default, as Plaintiff demanded, Defendant sold additional vehicles out of trust, leading to the filing of the complaint in this case. (Doc. 10 at ¶¶ 20 – 22). Plaintiff performed another audit in early March and learned that Defendant had sold an additional twenty-five vehicles out of trust. (Doc. 10 at ¶ 24).

Plaintiff loaned money to Robert Allen Nissan of Helena, was granted a security interest in certain collateral, and has failed to repay the loan as required under the wholesale agreement. These facts are sufficient to show that Plaintiff is likely to succeed on the merits of its breach of the wholesale agreement claim.

2. <u>Irreparable Harm</u>

As of February 22, 2019, when the complaint was filed, Defendant Robert Allen Nissan of Helena had already sold 25 vehicles "out of trust" and $795,584 was due and owing from Defendant to Plaintiff for those vehicles. (Doc. 10 at ¶ 21). As of March 5, 2019, Defendant Robert Allen Nissan of Helena had sold an additional twenty-five vehicles "out of trust," increasing the "sold out of trust" or "SOT" balance from $795,584 to over $1.2 million. (Doc. 10 at ¶ 24).

Plaintiff is harmed when a vehicle is "sold out of trust" because the collateral is gone. Plaintiff cannot recover a vehicle sold to a customer in the ordinary course of business under Mont. Code Ann. 30-9A-320. Plaintiff has already suffered substantial harm as the result of Defendant's defaults. Defendant has demonstrated that it will continue to sell vehicles out of trust and Plaintiff will suffer irreparable harm if this Court does not restrain Defendant Robert Allen Nissan from continuing to sell vehicles out of trust.

3. <u>Balance of Equities & the Public Interest</u>

Plaintiff's security interests have been substantially harmed due to Defendant's defaults and the balance of equities and public interest weighs in favor of the temporary restraining order.

**CONCLUSION**

The Court concludes that Plaintiff has clearly demonstrated a likelihood of success on the merits, a threat of imminent and irreparable harm, the balance of equities tipping in its favor, and a furtherance of the public interest, all in support of the granting of a temporary restraining order.

**FINDINGS OF FACT**

1. Defendants received timely and proper notice of this hearing.

2. Plaintiff has established the probable validity of its security interest in, and claim to possession of, the vehicles identified on the attached **Exhibit A** and all of Defendant's furniture, fixtures, machinery, supplies and other equipment, all motor vehicles, tractors, trailers, implements, service parts and accessories and other inventory of every kind, all accounts, contract rights, chattel paper and general intangibles as described in the attached **Exhibit B**.

The parties having stipulated to the following in open court,

IT IS HEREBY ORDERED that Defendants and their principals, agents, employees and other representatives:

1. May sell or lease the Collateral in the ordinary course of business only as provided in this Order:

   a. At the time of any sale or lease of any vehicle, Defendant shall immediately notify NMAC of such sale or lease via email to the following email address: Jeffry.Griffin@nissan-usa.com, by promptly delivering or faxing to NMAC a true copy of the written contract of such retail sale or lease at 8900 Freeport Parkway, Irving, Texas 75063 (fax: 972 607-8236) and by notifying NMAC's representative on site at 3135 Prospect Ave., Helena, MT 59601.

   b. Defendant shall turn over possession to NMAC and NMAC shall maintain physical custody of titles and manufacturers certificates of origin ("MCO") for all vehicles in which NMAC has a lien or security interest, whether or not financed by NMAC.

   c. Before delivery to a customer of a vehicle identified on the attached Exhibit A, and within one business day from Defendant's receipt of any of the sale proceeds for any retail sale or lease of a vehicle, including any vehicle identified on Exhibit A that has been sold or leased on or before the date of this Order for which Defendant received proceeds before or after the date of this Order, Defendant shall immediately and forthwith remit to NMAC by cashier's check delivered to NMAC's representative on site at 3135 Prospect Ave., Helena, MT 59601 or by wire transfer or direct payment to NMAC's bank in accordance with the wire instructions provided to Defendant by NMAC all amounts received by Defendant up to the amount advanced by NMAC to Defendant to acquire the vehicle (the

"Advanced Price"). Defendant may not pay such amounts to NMAC via electronic funds transfer ("EIPP"). Any proceeds in excess of the Advanced Price on a particular vehicle may be retained by Defendant to use towards its operating expenses. NMAC's security interest continues to attach to the proceeds in excess of the Advanced Price to the extent they are not used to cover operating expenses;

d. Before delivery to a customer of a vehicle not identified on the attached Exhibit A (the "Non-Floored Vehicles"), and within one business day from Defendant's receipt of any of the "cash" proceeds of such sale or lease of a Non-Floored Vehicle, Defendant shall immediately and forthwith remit to NMAC by cashier's check delivered to NMAC's representative on site at 3135 Prospect Ave., Helena, MT 59601 or by wire transfer or direct payment to NMAC's bank in accordance with the wire instructions provided to Defendant by NMAC funds received by Defendant in the amount of 80% of Defendant net sale price of the Non-Floored Vehicle after payment of taxes, registration, and licensing. Defendant may not pay such amounts to NMAC via EIPP.

e. Should Defendant receive any vehicle as a "trade-in" for the payment of a vehicle or a Non-Floored Vehicle, Defendant shall notify NMAC within one business day of receiving the trade-in by email to the following email address: Jeffry.Griffin@nissan-usa.com and by notifying NMAC's representative on site at 3135 Prospect Ave., Helena, MT 59601. Furthermore, Defendant shall promptly pay or satisfy any liens or amounts owing against the trade-in vehicle. Defendant may subsequently sell the trade-in as a Non-Floored Vehicle in accordance with subparagraphs a, b, c and d above;

f. Trades or transfers of vehicles by Defendant with other dealers ("Dealer Trades") are prohibited;

g. Defendant shall limit the use of Demonstrator Vehicles to customer test drives of no more than 24 hours in duration.

h. Defendant may sell parts, accessories, or related supplies ("Parts") in the ordinary course of its service department's business but Defendant shall use the proceeds from the cost of the Parts sold to either (1) buy replacement Parts, or (2) pay Defendant's invoice cost on account of part's sales, in the form of cashier's checks or other immediately available funds to NMAC. While Defendant continues to use parts, it must replenish the parts inventory to adequately protect and maintain NMAC's collateral position. Defendant shall submit to NMAC a written accounting upon its request of the following:

  i. Parts sold the previous week;

  ii. Parts ordered as replacements the previous week; and,

  iii. Payment for any parts not replaced the previous week.

2. Defendant is restrained from removing any of the Collateral in such manner as to make it less available to seizure by levying officer and/or impairing the value of the subject Collateral.

3. Defendant shall permit NMAC and its authorized agents and employees to enter upon Defendant's sales lot and business offices located at 3135 Prospect Ave., Helena, MT 59601 during business operating hours. NMAC shall be authorized to hold possession of keys to all vehicles, to be present while all mail and other package deliveries are opened and to review the cash receipts journals on a daily basis. NMAC is authorized to conduct audits and inspections of the Collateral and Defendant's books and records, including making

photocopies thereof. Defendant shall deliver copies of all bank statements and daily website bank statements, contracts in transit and lien payoff schedules to NMAC within one hour of receipt by Defendant of such statements each day.

4. Defendant must, and its managers, members and employees must cause Defendant to, comply with all its agreements with NMAC.

5. In the event that Defendant violates any term or terms of this Temporary Restraining Order, NMAC may file an application to enforce the Temporary Restraining Order. The Court may review such ex parte application prior to the date of the hearing on the temporary injunction and the Court may enter an order to enforce the terms of this Temporary Restraining Order as reasonably necessary, including, but not limited to, issuing an immediate order for writ of possession or turn-over of funds or imposition of sanctions.

IT IS FURTHER ORDERED that Plaintiff shall not be required to provide security.

IT IS FURTHER ORDERED that an expedited hearing of Plaintiff's Motion for Preliminary Injunction is set down on Thursday, March 28, 2019, at 10:00 a.m. in Courtroom II, United States Courthouse, Helena.

Dated this 19th day of March, 2019. 12 03 o'clock p.m. MDT.

_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE